UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

_____
                                                                            :
NADRA ENZIAYA; DONALD L. CHOPIN;                   :
KATHERINE D. LAGARRE; RONALD MORRISON;      :
NORMAN L. OAKS; FRAZER L. O'HARA; ROBERT S. :
O'HARA; MALIK RAHIM, Plaintiffs                               :
                                                                            :
                                                                            :
         VS.                                                              :
                                                                            :
MITCHELL J. LANDRIEU;                                          :
RONAL SERPAS; and                                              :
CITY OF NEW ORLEANS;                                         :
         Defendants                                                   :
                                                                            :
_____:

## COMPLAINT

Plaintiffs by and through their attorneys, allege the following:

## NATURE OF ACTION

1.       Plaintiffs file this action asking this Court to stop a threat of unconstitutional deprivation of First Amendment activities of peaceful assembly, freedom of speech, petitioning the government, and freedom of expression in a traditional forum, Duncan Plaza, across the street from New Orleans City Hall.

2.       Plaintiffs and others, calling themselves Occupy New Orleans, have peacefully occupied Duncan Plaza since October 6, 2011.  This group has been protesting the dramatic inequality and economic injustice in the USA and has by their actions and by their speech expressed their views on any number of social justice issues by regularly engaging in open meetings, sharing food and other resources, and by maintaining a 24 hour presence in the park.

3. October 7, 2011, Mayor Landrieu and other officials visited Occupy New Orleans in Duncan Plaza and told participants he was "glad you all are doing well" and encouraged them to get some doughnuts and to keep their spirits up.

4. On November 8, 2011, a volunteer attorney for Occupy New Orleans met with City Attorney Richard Cortezias who advised that the City of New Orleans was not going to enforce curfew restrictions or any other such laws against the people staying in Duncan Plaza. The City of New Orleans has provided and maintained two portable toilets for the Occupy New Orleans participants. Yet on December 3, 2011, the Mayor of New Orleans effectively revoked authorization for the people when he said the protestors must immediately clear the park or face police action.

5. This threat is in direct violation of a consent decree entered into by the City of New Orleans in this federal court many years ago that City authorities would stop arresting people for sleeping in public. Defendants cannot now do exactly that under the pretext of another provision of their municipal code.

6. When the people of Egypt, Libya, Syria, Tunisia and other countries gathered to protest injustices in their countries, the United States government spoke out in favor of those protests and was very critical when their governments attempted to interfere with the protestors. This action seeks the same protection for people in the United States of America who are protesting injustices that the United States seeks for democratic protestors in other countries.

**JURISDICTION AND VENUE**

7. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 and under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

8. This Court has both subject matter jurisdiction and personal jurisdiction as this action is brought pursuant to the First and Fourteenth Amendments to the U.S. Constitution under 42 U.S.C. § 1983.  This court has jurisdiction to issue injunctive relief for violations of Constitutional rights under to 28 U.S.C. §§ 1331, 1343.  Declaratory relief is available under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

9. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2) because the Plaintiffs reside in this judicial district, and because the acts that gave rise to this lawsuit occurred principally in the City of New Orleans.  This District is also an appropriate venue under 28 U.S.C. § 1391(b)(1) because the Defendant are in this judicial district.

**PARTIES**

**I.  Plaintiffs**

10. Plaintiff Nadra Enziaya is a resident of New Orleans supervises the community patrol at OccupyNOLA.  He provides free security and is a liason with the New Orleans police department, as needed.  *See* Exhibits, Declaration.

11. Plaintiff Donald Chopin is a resident of New Orleans and has been involved with OccupyNOLA since the first day in Duncan Plaza.  *See* Exhibits, Declaration.

12. Plaintiff Katherine LaGarre is a resident of New Orleans and has been involved with OccupyNOLA in Duncan Plaza since October 6th to specifically assist the homeless.

13.     Plaintiff Ronald Morrison is a resident of New Orleans and has been an active participant with OccupyNOLA since its inception.  *See* Exhibits, Declaration.

14.     Plaintiff Norman Oaks is a resident of New Orleans and former member of the U.S. armed forces.  He has been an active participant with OccupyNOLA since its inception.  *See* Exhibits, Declaration.

15.     Plaintiff Frazer O'Hara is a resident of New Orleans and has been an active participant with OccupyNOLA since its inception.  *See* Exhibits, Declaration.

16.     Plaintiff Robert O'Hara is a resident of New Orleans and with his son Frazer, he has been an active participant with OccupyNOLA since its inception.  *See* Exhibits, Declaration.

## II.     Defendants

14.     Defendant Mitchell J. Landrieu is the Mayor of New Orleans; he is sued in his official capacity.

15.     Defendant Ronal Serpas is the Chief of Police in the City of New Orleans; he is sued in his official capacity.

16.     The City of New Orleans is a municipality and the local governmental entity responsible for the enforcement of the laws of the U.S. Constitution as well as state and local laws in the actions described in this complaint.

## STATEMENT OF FACTS

17.     Occupy New Orleans is a local voluntary informal political organization formed in late September 2011 by citizens of New Orleans to stand in solidarity with the Occupy Wall Street protest in Zucotti Park, New York City, New York, to protest against the undue and

corrupting influence of money and corporations in our political system at the Federal, state, parish and city government levels.

18.     The first meeting of Occupy New Orleans was conducted on October 2, 2011 at Washington Square in the Faubourg Marigny.  At this meeting, it was decided by consensus that Duncan Plaza be chosen as a protest location because of its unique and public location directly across from city hall and proximity to the Louisiana Superdome.

19.     Duncan Plaza is a public forum that has historically been used for expressive activity in New Orleans.  It has been the site for dozens of protests and rallies.  It was occupied for months after Hurricane Katrina by hundreds of people in tents as expressive activity protesting the severe housing crisis in New Orleans.  That expressive activity was only stopped when the entire area was fenced off so that demolition of the former Louisiana Supreme Court and a state office building could be demolished.   Since its reopening, Duncan Plaza continues to be a place where protests and rallies occur challenging all manner of injustices and causes.

20.     Defendants and their predecessors accept people camping out as a protected activity and have for decades.  Thousands of people in New Orleans have camped out for Mardi Gras spots, for tickets for football games, for concert tickets, for sales, for oyster leases, and for other government benefits.

21.     The U.S. Eastern District of Louisiana issued a Summary Judgment declared invalid the municipal ordinance which made sleeping in public a crime in the case *Thomson v. City of New Orleans,* Case No. 85-5475 (Judgment attached, Exhibits).  No similar ordinance has ever since been passed in the the City of New Orleans.  In fact, in post-Katrina years, the City Council has specifically decided not to enact such an ordinance after considering same.

22. Occupy New Orleans began its protest in Duncan Plaza on October 6, 2011 after a large and peaceful demonstration beginning at the Orleans Parish Criminal District Court and ending at Duncan Plaza. Since the continuous occupation of Duncan Plaza, protestors have renamed Duncan Plaza to "Alexander Avery Park," after the Louisiana civil rights leader and politician.

23. Occupy New Orleans has been governed by a General Assembly which conducts regular meetings in Duncan Plaza which require the presence of a majority of more protest participants. All decisions regarding the business of Occupy New Orleans are made during the General Assembly through be a consensus of all persons present at the meetings.

24. The hallmark of the Occupy movement, in New Orleans and elsewhere, is continuous occupation of high visibility locales associated with democracy or corporate and financial influence as protest sites. Duncan Plaza is a highly visible public park located in the Central Business District neighborhood of New Orleans and in close proximity to nearby to banks, corporations and other institutions at the heart of the Occupy Wall Street and Occupy New Orleans protesters political concerns, including the New Orleans City Hall, the Mercedes-Benz Superdome, Shell Oil Company, the Federal Reserve, and the soon to be shuttered New Orleans U.S. Mail Postal facility.

25. The act of occupying serves as a means of communicating their protest message that popular control over the means of democratic governance must be renewed. There are lots of historical precedents in this country and others. For example, in 1932 tens of thousands of World War I veterans and their families made makeshift camps occupying large parts of Washington DC demanding bonuses for their military service. In the recent "Arab Spring," thousands of citizens occupied central plazas and parks protesting against injustices by the

governments.  No one can forget the tens of thousands of people in China who occupied Tiananmen Square in 1989.

26.     Occupy New Orleans' General Assembly has adopted policies and procedures by consensus that govern the conduct of its protests, business, and participants at all events conducted by the organization or on its behalf.  These policies are to help with the safety and health of protest participants, through the discouragement of use of drugs or alcohol, or engaging in threatening or disorderly behavior, at Duncan Plaza or while participating in any of its political protest related rallies and events.

27.     As the protest has grown, Occupy New Orleans has attracted some participants with a range of physical and mental health problems, due to the complete lack of city resources to address these issues.  Protest organizers have attempted to address these issues by assisting participants in accessing the limited resources the City of New Orleans provides.  Organizers have also instructed participants that occupy Duncan Plaza to ask any persons observed acting in a violent or disruptive manner to leave the park immediately and to call 911 to obtain police assistance if necessary.

28.     To protect the safety of overnight occupiers protesting at the park, the General Assembly agreed to institute and require safety patrols where persons volunteer and are responsible for regularly patrolling the park grounds at night making note of any disruptive or violent behavior and if necessary calling 911 to provide assistance.  When possible, such behavior may be resolved through internal mediation.  The goal is to deter and prevent bad behavior and to encourage cooperation between parties.  The goal is not to kick people out of the organization, though this has occurred.

29. As the name "Occupy New Orleans" makes clear, the continuous occupation of Duncan Plaza is not just integral to the protesters' expression of the grievances; it is their protest. The twenty-four hour per day occupation of a public park in the heart of the Central Business District of New Orleans is a very important, significant, and inseparable, part of Occupy New Orleans primary political protest message. Many people in New Orleans, especially with New Orleans' large service industry, work shifts other than 6am-10:30pm and the most convenient times for them to visit the occupation and to discuss pressing political issues are between the hours of 10:30pm and 6:30am. Free speech and political discussion does not cease in America or New Orleans between the hours of 10:30pm and 6am; in fact, due to technological advancements and cultural developments of our modern society over just the past decade, radio, television, and internet programs broadcast political discussion into our homes, businesses and lives 24 hours per day 7 days per week continuously.

30. Occupy New Orleans has broadcast political protest events to an international audience via livestream between the hours of 10:30-pm and 5am on several occasions and many participants have watched livestream broadcasts from other Occupy groups around the world and communicated political discussion with participants of these other Occupy groups during these hours, including Occupy protest groups in other countries in different time zones. Banking and political decisions in Europe and Asia often affect political and financial decisions in American markets and government which are at the heart of the Occupy movement's and Occupy New Orleans' political grievances and message. The individual Plaintiffs and other participants in Occupy New Orleans intend to continue their protest continuously twenty-four hours per day.

31. An indication of the extent of the message of Occupy New Orleans can be found by looking at the dozens of articles about the protest in the Times-Picayune, the dozens of

television news stories about the protests, and the innumerable national and international news stories and opinion pieces that reference Occupy NOLA its nickname.  A Google search of Occupy NOLA found over 4.9 million references.

32.	Occupy New Orleans organizers and participants have cooperated and worked in good faith with city officials and the NOPD in an attempt to conduct a peaceful political protest of their grievances against the abuses of government, big corporations, Wall Street, the financial industry, and wealthy elite in our society.  NOPD officers have regularly patrolled Duncan Plaza and are friendly with protest participants.

33.	Mayor Landrieu gave his tacit approval and authorization for this protest when he visited the Occupy New Orleans protest on the morning of October 7, 2011 and told participants he was "glad y'all are doing well" and encouraged them to get some doughnuts to keep their spirits up.

34.	Attorney Miles W. Swanson, volunteer counsel for Occupy New Orleans, met with New Orleans City attorney Richard Cortezias on November 8, 2011.  Cortezias expressed that the City was not going to enforce curfew restrictions or any other law against Occupy New Orleans participants, as the city's real concern was for the health and safety protest participants.  In fact, the City of New Orleans have provided and maintained two porta-potties for Occupy New Orleans participants soon after the protest began.

35.	Participants of Occupy New Orleans conduct regular cleanup activities at the park where they pick up trash, cover-up things that may look unsightly to passers-by (like protest sign raw materials and the dish cleaning and parts of the kitchen area) with tarps, sweep and organize the campsite and supply materials, and wash dishes using bleach and dishwashing soap and

water.  The Defendant City refuses to provide running water to assist in cleanup of the park, after repeated requests.

36.    The City has provided electricity to Occupy New Orleans since the protest began by allowing participants to access and use electrical outlets located throughout Duncan Plaza.

37.    The City has never notified Occupy New Orleans of any written health or sanitation violations.

38.    According to Unity of Greater New Orleans, the homeless rates in the New Orleans area are significantly higher than was the case pre-Katrina.  Some plaintiffs and a significant number of others participating with OccupyNOLA have no other place to live or sleep; they are homeless.

## INJUNCTIVE RELIEF

38.    Defendant Landrieu has changed his mind and decided to revoke the nearly two month authorization of expressive and protected conduct by plaintiffs.

39.    Deprivation of constitutional rights under the First Amendment does irreparable harm because it cannot later be righted by financial considerations.

40.    The City of New Orleans ordinance which made sleeping in public a crime in the case *Thomson v. City of New Orleans,* Case No. 85-5475 has already been declared invalid.

41.    Plaintiffs are entitled to an order prohibiting defendants from evicting them from the park and a declaration that the City of New Orleans may not make arbitrary decisions about access to public for a for core expressive activity.

## FIRST CAUSE OF ACTION
### (First and Fourteenth Amendment)

42. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

43. Plaintiffs bring this claim against all Defendants in their official capacities.

44. All Defendants' actions are under color of law and their authority as state officers.

45. Defendants threats to revoke permission and to evict plaintiffs from the public forum of Duncan Plaza violates the First Amendment to the U.S. Constitution.  Revoking authorization after nearly two months of peaceful activity is not a reasonable time place or manner restriction.  The actions of defendants are not narrowly tailored to advance a compelling governmental interest.

46. Plaintiffs have no adequate remedy at law or other effective means of enforcing their First Amendment rights other than by seeking declaratory and injunctive relief from the Court.

47. As a result of Defendants' unlawful conduct, all Plaintiffs are suffering harm.

## SECOND CAUSE OF ACTION
### (Fifth and Fourteenth Amendments)

48. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

49. Plaintiffs bring this claim against all Defendants in their official capacities.

50. All Defendants' actions are under color of law and their authority as state officers.

51. Defendants actions also violate the Due Process and Equal Protection of the Fifth and Fourteenth Amendments to the U.S. Constitution because they are acting in an arbitrary and capricious manner.

52. Plaintiffs have no adequate remedy at law or other effective means of enforcing their Fifth and Fourteenth Amendment rights other than by seeking declaratory and injunctive relief from the Court.

53. As a result of Defendants' unlawful conduct, all Plaintiffs are suffering harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the Court:

a. A temporary restraining order, preliminary and permanent injunction enjoining Defendants, their officers, agents and employees, from revoking authorization for plaintiffs to remain in their peaceful assembly in the public forum in Duncan Plaza;

b. A declaration that the decision to force the people in Duncan Plaza to leave as announced by the Mayor violates the First and Fourteenth Amendments to the US Constitution;

c. Award Plaintiffs attorney's fees and costs; and

d. Order such other relief as this Court deems just and proper.

Dated: December 5, 2011          Respectfully submitted,

/s/ Davida Finger_____
William P. Quigley, La. Bar Roll No. 7769
Davida Finger, La. Bar Roll No. 30889 (T.A.)
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
Stuart H. Smith Law Clinic & Center for Social Justice
7214 St. Charles Ave, Box 902
New Orleans, LA 70118
Tel: (504) 861-5596
Fax: (504) 861-5440
Email: dfinger@loyno.edu

Miles Swanson, La. Bar Roll. No. 32053

>Miles W. Swanson, Esq.
>4000 Bienville St., Ste. A
>New Orleans, LA 70119
>(504) 383-4335 office
>(504) 482-6171 facsimile
>mws@mwswanson.com

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury that the facts contained in this document are true and correct to the best of my knowledge.

DATED:  December 5, 2011                     Signed,
                                             /s/ Davida Finger, La Bar Roll No. 30889

## CERTIFICATION OF NOTICE TO OPPOSING COUNSEL
## PURSUANT TO FRCP 65(B)1(b)

Pursuant to FRCP 65(B)1(b), I certify that I have sent a copy of this pleading and associated

documents to City Attorney Richard Cotizas and I have notified him by telephone of this lawsuit.

DATED:  December 5, 2011                     Signed,
                                             /s/ Davida Finger, La Bar Roll No. 30889